FILED

02/15/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 14, 2017

**STATE OF TENNESSEE v. GREGORY LEE GORDON**

**Appeal from the Circuit Court for Lawrence County**
**No. 33394     Robert L. Jones, Judge**

_____

**No. M2017-00649-CCA-R3-CD**

_____

The Defendant, Gregory Lee Gordon, pled guilty to aggravated assault by strangulation, a Class C felony, and after a sentencing hearing, was ordered to serve nine years in the Tennessee Department of Correction.  On appeal, he argues that the trial court erred in denying his request for an alternative sentence.  After review, we affirm the sentencing decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Brandon E. White, Columbia, Tennessee (on appeal); Claudia S. Jack, District Public Defender; and Robert H. Stovall, Assistant Public Defender (at hearing), for the appellant, Gregory Lee Gordon.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Gary M. Howell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant was indicted for aggravated rape, aggravated assault by strangulation, especially aggravated kidnapping, and tampering with evidence arising out of his encounter with the victim on June 13, 2015.  On January 12, 2017, the Defendant pled guilty to aggravated assault with the sentence to be determined by the trial court

following a hearing. As part of the plea, the remaining charges were dismissed, and the parties agreed that the Defendant would not be sentenced as more than a Range II offender.

The trial court conducted a sentencing hearing, at which Alisha Helton with the Tennessee Department of Correction's Probation and Parole Office testified that she prepared the Defendant's presentence report. The report contained the Defendant's verified criminal history, spanning a time period from 1987 to 2014 and nine pages of the presentence report. The report also contained the Defendant's history of supervision, including times he was placed on probation or paroled. Ms. Helton testified that a risk assessment of the Defendant was included in the presentence report. The assessment showed the Defendant to be high risk for violent behavior, low risk for friends, low to moderate risk for attitudes and behaviors, and moderate to high risk for aggression. Ms. Helton said that the Defendant was also assessed using the Vermont Assessment Tool for Sex Offender Re-Offense because he was on the sex offender registry, and he scored high on the assessment, meaning GPS monitoring would be required if he were placed on probation.

The Agency Statement in the presentence report detailed that the victim conveyed that she and the Defendant were dating, and they met the evening of the incident to discuss the future of their relationship and the Defendant's past history. The Defendant got into the victim's car and drove around to talk and procure some crack cocaine. The Defendant drove to a wooded area where he forced the victim to perform oral sex on him and became angry when she did not do so satisfactorily. The Defendant then hit the victim repeatedly on her head and also tried to suffocate and choke her. He forced her into the trunk of the car and drove around. The Defendant subsequently made several stops, including times he stopped and hit the victim on the head with a flashlight and threatened her with a screwdriver, as well as a time he forced her to wash off in a creek. The Defendant also took the victim to a gym "where he made her take a shower to remove the blood from her hair and body."

Investigator Blake Grooms with the Lawrenceburg Police Department, one of the investigators in the case, recalled that the police collected swabs of several reddish-brown stains, indicative of blood, from various items, which were compared to swabs taken from the Defendant and the victim. Swabs from the seal inside the car trunk were positive for the victim's blood. Swabs from the shower area of the gym returned a DNA profile consistent with a mixture of at least two individuals, including at least one male, and the victim as the major contributor. The police searched the Defendant's phone and found a text message from the offense date in which the Defendant said, "Me and Girl went out last night, she got drunk and started running her mouth as usual and smacked

me.  I kicked her ass."  On cross-examination, Investigator Grooms confirmed that the victim was not present at the sentencing hearing to testify about what happened.

The Defendant acknowledged that he "kind of over did it with [the victim]."  He said that the victim drank a twelve-pack of beer while they were together, but he did not drink.  They made three or four trips to buy cocaine, and an "argument developed over who was going to use the last part of the cocaine."  They also argued about a woman who called the Defendant while he and the victim were together.  The Defendant admitted that he hit the victim in the head with his hand and that she sustained a "small slit" as a result.  He also admitted that he grabbed the victim by the neck and pushed her against the car window while he was driving but denied "choking her out."  He further denied hitting the victim on the head with a flashlight.  He did not know how the victim's blood got on the head of the flashlight, but he explained that they had used the flashlight while they were "getting high."  The Defendant said that the victim got into the trunk voluntarily to hide from a drug dealer who refused to sell to the Defendant when the victim was present.  The Defendant could not explain, however, how the victim's blood got inside the trunk when the fight allegedly occurred after that final drug purchase.  The Defendant said that the victim showered at the gym because she thought they were getting more drugs and did not want to go home.  The Defendant explained that he had access to the gym where the victim showered because he was a member and had a key and passcode to get in.

The Defendant conceded that the criminal history in his presentence report was correct with the exception of a theft up to $500.  The Defendant challenged the risk assessment's finding that he was a high risk for violence, claiming that he had learned to ignore the "negative things that people say to [him]."  The Defendant said that he was fifty-one years old, ran his own car detailing business, and would live with his mother if released on probation.  The Defendant claimed that he previously had successfully completed probation.  He also claimed that he had never absconded but instead had entered a rehabilitation program without informing his probation officer.

Mary Allen Gordon, the Defendant's mother, testified that the Defendant would live with her if placed on probation.  She said that the Defendant usually worked in detailing cars but had also worked at a sawmill.  She stated that the Defendant never absconded – he was in a rehabilitation program during the time he was accused of being missing.  She admitted that the Defendant had "a temper" but claimed that he had turned his life around by attending church and had calmed his temper.  She recalled that the Defendant had attended church for three years and obtained a ministry license.  She said that the Defendant had never assaulted her, and she was not concerned about his living in her household.

Brian Martin testified that he had known the Defendant "like a brother" since 2004 or 2005. He said that he worked at the Defendant's car-detailing business for two or three years until Mr. Martin was incarcerated in 2015. Mr. Martin said that the Defendant influenced him to turn his life around.

After the conclusion of the proof, the State argued that the Defendant should be sentenced as a Range II offender and asked the court to apply the following enhancement factors: the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; the Defendant treated the victim with exceptional cruelty during the commission of the offense based on the credibility of the victim's allegations and the incredulousness of the Defendant's version of events; the Defendant had a history of failing to comply with the conditions of a sentence involving release in the community; the Defendant was released on probation and was on the sex offender registry when he committed the present offense. Tenn. Code Ann. § 40-35-114(1), (5), (8), (13)(C). The State asserted that the Defendant should be sentenced to ten years in confinement based on his high risk of reoffending, prior convictions for violent acts, and the "excellent break" he received as part of the plea.

The Defendant conceded that there were no applicable mitigating factors. He asked the court to sentence him to eight or nine years of split confinement, with credit for the two years he already had served. He argued that total confinement was not warranted because the victim "d[id]n't care enough" to attend the sentencing hearing.

The trial court noted that the majority of the Defendant's consistent criminal behavior occurred in the 1980s and 1990s and that he "ha[d] really not been a horrible citizen the last 15 or so years, except for the events of 2010 and this event of 2016." The court also noted that this was not the worst aggravated assault case it had seen. The court stated that, in determining the Defendant's sentence, it was considering the principles of sentencing and the evidence of the offense from the victim's version of the events in the incident report and the Defendant's version. The court observed that "[t]here is probably some credibility issues with regard to both because they apparently were well drugged during a good bit of that night[.]" The court found that the Defendant was subject to a Range II sentence and "might technically be subject to a Range III but for the agreement of the parties." The court noted that "those extra offenses . . . are available for enhancement of [the Defendant's] sentence within Range II." The court agreed with the various enhancement factors submitted by the State. The court found that the Defendant had not been successful on probation, noting that the Defendant's last prison sentence was in 2010 for which he received determinate release after seven months, but his probation was revoked ten months later. The court concluded that the appropriate sentence was nine years in confinement, with no suspension of the sentence.

# ANALYSIS

On appeal, the Defendant does not challenge the length of his sentence or offender classification. He only contests the trial court's denial of an alternative sentence. He argues that the trial court erred in imposing a sentence of confinement because he "exhibited candor to the trial court, accepted responsibility for his actions, and is capable of being rehabilitated with the support of his family, friends, and through state probation services."

A trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of

the purposes and principles of our Sentencing Act." Id. at 707. This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

- 6 -

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

The presentence report reflects that the Defendant has a long history of criminal conduct with single convictions for aggravated statutory rape, statutory rape, aggravated burglary, robbery, domestic violence, failure to appear, reckless endangerment, forgery in an amount between $1000 and $10,000, passing forged checks, possession of drug paraphernalia, disorderly conduct; two convictions for violation of the sex offender registry, passing worthless checks, and driving on a suspended/canceled/revoked license; three convictions for theft up to $500 and public intoxication; four convictions for auto burglary and traffic offenses; five assault convictions; and thirteen convictions for forgery up to $1000.

The presentence report also reflects that measures less restrictive than confinement have frequently and recently been applied to the Defendant unsuccessfully. The Defendant was placed on probation in October 1990, which was revoked in December 1990. He received determinate release in July 1991, his probation was revoked in September 1992, and the sentence expired in October 1993. The Defendant received probation on a new sentence in July 1996, which was partially revoked in September 1997. He was reinstated to probation in November 1997 but absconded in July 1998, and the probation was revoked in May 1999. He was paroled in July 2001, but his parole was revoked in February 2002 and the sentence expired in November 2002. The Defendant received determinate release on a new sentence in September 2010, but his probation was revoked in July 2011 and the sentence expired in May 2012. As shown, the Defendant has previously received the benefit of probation, determinate release and parole, yet he has repeatedly failed to successfully complete an alternative sentence. Not even multiple periods of incarceration have deterred him from committing subsequent criminal acts.

The trial court considered the Defendant's request for alternative sentencing and properly exercised its discretion in imposing a sentence of confinement. The Defendant's long history of criminal conduct and repeated failure of measures less restrictive than confinement support this determination.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the sentencing decision of the trial court.

_____
ALAN E. GLENN, JUDGE